IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD ANTHONY MOORE,

                    Plaintiff,                          CIVIL ACTION
                                                        NO. 17-019
        v.

CITY OF LANCASTER, et al.,

                    Defendants.

## OPINION

**Slomsky, J.**                                              **July 26, 2018**

## I.    INTRODUCTION

Plaintiff Richard Anthony Moore brings this civil rights action against the Borough of Ephrata; the City of Lancaster, Ephrata Police Detectives Peter G. Sheppard and Graeme Quinn, Lancaster City Police Officer Matthew Odenthal, and John Does 1-10.[1]  (Doc. No. 25 ¶¶ 4-12.)  Moore's claim against Sheppard, Quinn, and Odenthal is in their individual capacities.[2]

---

[1]    According to the First Amended Complaint ("FAC"), the "John Doe" defendants are "individuals and entities currently unknown but will be substituted when known, as affiliated, associated or liable" for the reasons set forth in the First Amended Complaint.  (Doc. No. 25 ¶ 12.)  Plaintiff has not identified the John Does 1-10 and for this reason, and the reasons set forth in this Opinion, the claims against them will be dismissed.

[2]    The FAC contains claims for false arrest and malicious prosecution against William L. Harvey in his official capacity as the Chief of the Ephrata Police Department and Keith R. Sadler in his official capacity as Chief of the Lancaster City Police Department.  (Doc. No. 25 at 2.)  At the hearing on the Motions to Dismiss held on May 24, 2018, however, Moore's counsel stated that the Count I and II claims against the Borough of Ephrata, the City of Lancaster, Ephrata Police Chief William L. Harvey, and Lancaster Police Chief Keith R. Sadler are withdrawn and can be dismissed.  (Audio Recording, Mot. Hr'g, Moore v. City of Lancaster, et al., 4:09:36-4:10:13, May 24, 2018.)  He further clarified that Detectives Sheppard and Quinn and Officer Odenthal are being sued in their individual capacities.  (Id. at 4:11:02-03.)

In Counts I and II of his First Amended Complaint ("FAC"), Moore alleges claims of false arrest and malicious prosecution against Ephrata Detectives Peter G. Sheppard and Graeme Quinn and Lancaster Police Officer Matthew Odenthal under 42 U.S.C. § 1983 ("Section 1983"), in violation of his Fourth and Fourteenth Amendment rights.  (Id. ¶¶ 47 -61.)  In Counts III and IV, he raises Monell claims against the Borough of Ephrata and the City of Lancaster, respectively.[3]  (Id. at 9-10.)  Ephrata and the City of Lancaster are located within Lancaster County, Pennsylvania.

Defendants Borough of Ephrata, Detective Peter G. Sheppard, and Detective Graeme Quinn have filed a Motion to Dismiss the FAC in its entirety.  (Doc. No. 27.)  Defendants City of Lancaster and Officer Matthew Odenthal have also filed a Motion to Dismiss the FAC in its entirety.  (Doc. No. 28.)  These Motions are ripe for disposition.[4]

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On or about October 2, 2014, staff members of the Lancaster County Youth Intervention Center interviewed a then-fifteen-year-old female ("Jane Roe").[5]  (Doc. Nos. 25 ¶¶ 18-20; 53 at 2.)  Roe said that she had consensual sex with an older male several times during summer 2014.

---

[3]  The United States Supreme Court has held that a municipality or local government entity can be held liable pursuant to Section 1983 under certain limited circumstances, but not on the basis of respondeat superior.  Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  A municipality is subject to liability under Section 1983 when the violation of a plaintiff's federally protected rights is attributable to the execution of a government custom, policy, practice, or decision of a final municipal policy maker.  Id. at 690-91.

[4]  In reaching a decision, the Court has considered the FAC (Doc. No. 25), the Motions to Dismiss the FAC and related exhibits (Doc. Nos. 27, 28, 53, 54), Moore's Response in Opposition and related exhibits (Doc. Nos. 43, 44, 55), and the arguments of counsel at the May 24, 2018 hearing.

[5]  As mentioned supra note 1, Moore includes John Does 1-10 as Defendants.  (Doc. No. 25.)  It is unclear whether Moore is also suing the minor who identified Moore as the person who sexually assaulted her.  To avoid confusion and to distinguish her from Defendants John Does 1-10, the Court will refer to the minor as "Jane Roe" rather than "Doe."

(Doc. No. 53 at 2.)  She did not know his name but indicated that her father might be able to identify him.  (Id.)  Roe admitted to using a synthetic drug known as K-2, which can cause delusions, prior to the interview.  (Doc. No. 25 ¶ 21.)  She also admitted that she had recently used methylenedioxymethamphetamine (commonly known as ecstasy) and marijuana.  She was then scheduled to have an interview at the Lancaster County Children's Alliance.  (Doc. No. 53 at 2.)

On November 19, 2014, Roe was interviewed by Mary Halye, a social worker at the Children's Alliance.  (Id.)  She told Halye that sometime in summer 2014, she met a black male with short hair in Ephrata, Pennsylvania.  (Id.)  She described him as an individual in his forties who often wears a sweater, sweatpants, and brown work boots, and referred to him as "Dude" or "the guy."  (Id.; Doc. No. 54-2 at 6.)  She stated that she met "Dude" on or about July 1, 2014 and that they had their first sexual encounter that same day at the Ephrata Motel.  (Doc. No. 25 ¶ 24.)  Roe remembered the July 1, 2014 date because that night, her friend was admitted to the hospital for attempted suicide.[6]  (Doc. No. 53 at 2.)  Roe said that she and "Dude" had sexual intercourse three times during summer 2014 at the Ephrata Motel.  (Id.)

Eventually, the Ephrata Police Department was sent this information and commenced an investigation.  Sometime in January 2015, the Ephrata Police Department notified the Lancaster City Bureau of Police that Roe had reported having sexual relations with an adult male, with one incident taking place at the Marriott hotel in Lancaster, Pennsylvania.  (Doc. No. 54-2 at 6.)  During the course of their investigation, Ephrata Detectives Peter G. Sheppard and Graeme Quinn obtained a guest log from the Ephrata Motel.  (Doc. No. 25 ¶ 25.)  The log revealed that

---

[6]  In his Affidavit for Probable Cause, Ephrata Detective Peter Sheppard stated that after checking hospital records, he determined that Roe's friend was transported to Hershey Medical Center on July 1, 2014.  (Doc. No. 53 at 2.)

Moore was a guest at the Ephrata Motel on July 1, 2014 and July 2, 2014.[7]   (Id. ¶ 26.)
Sometime in February 2015, Detective Graeme Quinn of the Ephrata Police Department
identified Moore as Roe's perpetrator and notified Lancaster City Police Officer Matthew
Odenthal.  (Doc. No. 54-2 at 6.)

On March 10, 2015, Moore voluntarily went to the Ephrata police station to speak with
Detectives Sheppard and Quinn.[8]  (Doc. No. 53 at 3.)  He told the detectives that he often went to
the downtown Ephrata area to speak with children to discuss the Bible and that the children
would call him "preacherman."  (Id.)  He also stated that he had spent some evenings at the
Ephrata Motel.  (Id.)  Moore mentioned that sometime in fall 2014, at a McDonald's restaurant,
someone accused him of being involved with that person's daughter.  (Id.)  At the interview, the
detectives asked whether Moore knew Roe.  (Doc. No. 25 ¶ 36.)  Moore said he did not.  (Id.)
After they showed him a photo of Roe, Moore clarified that he had seen her before but did not
know her or ever interacted with her.  (Id. ¶ 37.)

At an unspecified point during their investigation, Detectives Sheppard and Quinn met
with Roe and showed her a photo of Moore, unaccompanied by any other photos of other
suspects.  (Id. ¶ 33.)  The detectives asked her whether the individual in the photo was her rapist.
(Id.)  Roe said that it was.  (Id.)

---

[7]   The FAC alleges that Moore was not at the Ephrata Motel on July 1, 2014 and claims that the
signature on the guest log was a forgery.  (Doc. No. 25 ¶¶ 26-30.)  Moore does not provide
additional evidence to support these allegations.  At the May 24, 2018 hearing, Moore's
counsel stated that during Moore's criminal trial, the police officers admitted that the signature
on the July 1, 2014 entry did not belong to Moore.  (Audio Recording, Mot. Hr'g, Moore v.
City of Lancaster, et al., 4:41:27-4:41:32, May 24, 2018.)  This was not pled in the Amended
Complaint.

[8]   In a report memorializing Detective Sheppard's March 10, 2015 interview of Moore,
Detective Sheppard informed Moore that he was not under arrest and that the police were
investigating Roe's allegations.  (Doc. No. 55-2 at 1.)

On May 5, 2015, Ephrata Detective Sheppard secured an arrest warrant for Moore from a magistrate judge after submitting an Affidavit of Probable Cause.  (Doc. No. 53 at 2-3.)  The Affidavit states, in pertinent part, as follows:

### AFFIDAVIT OF PROBABLE CAUSE

1.  In October 2014, the female victim, [Roe] (DOB:03/26/99) reported to staff at the Youth Intervention Center that she had consensual sex with an older male several times over the summer of 2014.  She related that she does not know his name but a friend of hers . . . may know his name and that her father may be able to identify the subject.  As a result of this disclosure [Roe] was scheduled to have an interview at the Children's Alliance.

2.  On November 19, 2014, an Alliance Interview was conducted by Mary Halye, MSW.  [Roe] disclosed that she had met someone during the summer in Ephrata that went by the name "dude."   [Roe] stated that "dude", later identified as [Plaintiff] Richard Anthony Moore, was a black male with short hair who was in his 40's.  [Roe] related that she had sexual intercourse with Moore three times during the summer of 2014 at the Ephrata Motel located at 535 South State street . . . .

3.  [Roe] relates that the first sexual encounter happened on the same night one of her friends had attempted suicide and was in the hospital.  A check of hospital records indicate that her friend . . . was transported to Hershey Medical Center on July 01, 2014.

4.  The Ephrata Motel maintains a guest book to document who rents rooms in their establishment along with the date and the room number.  A check of the guest book at the Ephrata Motel shows that Richard Moore rented room #7 on July 01, 2014 and July 02, 2014.

5.  A police records check along with a check of the landlord/tenant listings showed that Moore had lived [in] . . . Ephrata, PA., during the summer of 2014.  Moore fit the description provided by [Roe] and [her friend] and both identified Moore as the person they had known as "dude" or "D."  Your affiant [Detective Sheppard] and Detective Quinn met with [Roe's father].  [Roe's father] positively identified Moore as the subject he had confronted in the Lancaster McDonalds after [Roe] had pointed him out – telling [Roe's father] that Moore was the person who had raped her.  [Roe's father] had spoken with Moore and asked him if he knew his daughter [Roe] – to which Moore acknowledged seeing her around but denied any contact with her.

6.  On March 10, 2015, at approximately 1335 hrs, Richard Moore came to the Ephrata Police Department to speak with your Affiant [Detective Sheppard] and

Detective Quinn.  The non-custodial interview took place in Interview room #4 within the Ephrata Police Department.  Moore related that he did frequent the downtown Ephrata area and would speak with the kids in an effort to talk to them "about the Bible and things of that nature" and that the kids call him "preacherman."  He related that he also has spent some nights at the Ephrata Motel when [Moore's girlfriend] would kick him out after an argument.  Moore also related that he was confronted in the fall of 2014 by someone in the Lancaster McDonalds who had accused him of being involved with his daughter.  Moore initially denied knowing the victim but later acknowledged knowing her but says that he did not assault her.[9]

(Id.)

On June 30, 2015, Moore was arrested by Ephrata police officers for statutory sexual assault;[10] involuntary deviate sexual intercourse with a person less than 16 years of age; corruption of minors; and unlawful contact with a minor.  (Doc. No. 25 ¶ 13; Ct. Summ., Commonwealth v. Moore, Cr. A. No. CP-36-CR-0005763-2015 (Pa. Ct. Comm. Pl. Lancaster Cty 2015).)

---

[9]  Moore disputes the characterization of this recollection in Detective Sheppard's Affidavit of Probable Cause because there is an inference that he provided inconsistent information to the Ephrata detectives about knowing Roe and therefore misled the magistrate judge.  It is well known, however, that these types of affidavits are typically drafted by "nonlawyers in the midst and haste of a criminal investigation.  Technical requirements of elaborate specificity . . . have no proper place in this area."  United States v. Conley, 4 F.3d 1200, 1207-08 (3d Cir. 1993) (citing United States v. Ventresca, 380 U.S. 102, 108 (1965)).

But Detective Sheppard's representation is not a misstatement because Moore initially stated that he did not know Roe but later acknowledged that he did.  (Doc. No. 55-2 at 4.)  After viewing Roe's photograph, Moore then told the detectives he had seen her before.  (Doc. No. 25 ¶ 37.)  Thus, it cannot be said that Detective Sheppard intended to mislead the magistrate judge because his statement in the affidavit is accurate.

[10]  Under 18 Pa. Stat. § 3122.1(b), statutory sexual assault in the first degree is defined as follows:

A person commits a felony of the first degree when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is 11 or more years older than the complainant and the complainant and the person are not married to each other.

Subsequently, on August 5, 2015, Lancaster City Police Officer Matthew Odenthal filed a Criminal Complaint supported by an Affidavit of Probable Cause to arrest Moore.  (Doc. No. 54-2 at 2 -6.)  The criminal complaint charged Moore with involuntary deviate sexual intercourse; statutory sexual assault; unlawful contact with a minor; and corruption of minors.  (Id. at 4-5.)

Officer Odenthal's Affidavit of Probable Cause states, in pertinent part, as follows:

### AFFIDAVIT OF PROBABLE CAUSE

I.    That in January of 2015, the Lancaster City Bureau of Police were notified by Ephrata Police Department that [Roe] reported having sexual relations with an adult male and that one occurrence happened at the Marriott Hotel in Lancaster, PA.

II.   That [Roe] was interviewed at the [REDACTED] on 19 November 2014. During that interview [Roe] referred to the person who had committed theses [sic] acts as "dude" or "the guy".  [Roe] stated that "the guy" was known to her from the Ephrata area.  The two met in a men's bathroom at the Marriott Hotel located at 25 S. Queen Street, Lancaster PA in August/September of 2014 (the beginning of the school year).  The guy made her [have] . . . sexual intercourse . . .  on the bathroom floor.  [Roe] described him as a tall black male with short hair who often wears a sweater, sweatpants and brown work boots.

III.  That in February of 2015, Detective Graeme Quinn, Ephrata Police Department notified this affiant that he had identified the [sic] "the guy", as Richard Anthony MOORE, B/M/49, D.O.B.: 12/20/1965.

IV.   That the victim was [REDACTED] years old and the defendant was approximately 48 years old at the time of the incident and the two were not married to each other.  The sexual acts performed on and with [Roe] tended to corrupt her morals.[11]

(Id.)

On the same day, Moore was arrested by Lancaster City police officers for statutory sexual assault and the related charges.  (Doc. No. 25 ¶ 14.)

---

[11]  The Court has been supplied with Officer Odenthal's Affidavit of Probable Cause in which information has been redacted.  (See Doc. No. 54-2 at 6.)  It is clear that the original document would identify Roe by name or initials, her age, and where her interview took place.  Ephrata Detective Sheppard's Affidavit of Probable Cause identifies Roe by initials. (See Doc. No. 52 at 2.)

The charges in both cases were consolidated for trial in the Court of Common Pleas of Lancaster County.  (Id. ¶ 45.)  On or about November 3, 2016, Moore was acquitted of all charges following a jury trial.  (Id.)

In this case, Moore alleges that despite the allegations within the four corners of the probable cause affidavit, he was unlawfully arrested by both the Ephrata police and the Lancaster police because neither Detective Sheppard nor Police Officer Odenthal had probable cause to arrest him.  (Id. ¶¶ 13, 14.)  In this regard, he alleges in his FAC and in his response to Defendants' claim that there was probable cause to arrest him, first that Ephrata Detectives Sheppard and Quinn improperly ignored the fact that Roe had used a delusional drug prior to her interview with the Lancaster County Children's Alliance and therefore her allegations should have been deemed too unreliable to support the probable cause.  (Id. ¶ 22.)

Second, Moore alleges that Roe had "accused numerous individuals of raping her over the course of her life, including family members.  In fact, in the report produced by Lancaster Children's Alliance, the Alliance noted that [Roe] had made a number of similar, false accusations in the past."  (Id. ¶ 19.)  He claims that Roe's history of alleged false reports should have been disclosed in Detective Sheppard and Officer Odenthal's respective Affidavits of Probable Cause.  (Id. ¶ 22.)

Third, he avers that Detectives Sheppard and Quinn improperly showed Roe a single photo of him with no other photos, unduly prompting her to identify him as her rapist.  (Id. ¶ 33.)  He claims that they "told and/or inferred to [Roe] that they identified the man in the photo as her rapist and asked her to confirm such."  (Id.)

Fourth, Moore asserts that Officer Odenthal relied on Ephrata Detective Sheppard's Affidavit of Probable Cause, which was based on untrustworthy information, and acted with

deliberate indifference because he failed to conduct a reasonable and independent investigation into the alleged incident at the Marriott Hotel in Lancaster.  (Id. ¶¶ 42-44.)

Lastly, Moore claims that the Borough of Ephrata developed and maintained policies, practices, procedures, and customs which reflected "deliberate indifference to the Constitutional rights of persons including the use of illegal photo arrays" while Lancaster City did so by exhibiting "deliberate indifference to the Constitutional rights of persons including the use of third-hand information on which to base Affidavits of Probable Cause . . . ."  (Id. ¶¶ 63, 67.)

The named Defendants now move to dismiss the FAC for failure to state a claim.  (Doc. Nos. 27, 28-3.)  First, they assert that both the June 30, 2015 arrest and the August 5, 2015 arrest were supported by probable cause because Ephrata Detectives Sheppard and Quinn, and Lancaster Police Officer Odenthal had sufficient information to reasonably believe that Plaintiff had committed statutory rape and related offenses.  (Doc. Nos. 27, 28-3.)  Second, they claim that Detectives Sheppard and Quinn and Officer Odenthal are shielded by qualified immunity. Lastly, the Borough of Ephrata and the City of Lancaster submit that the claims against them should be dismissed because sufficient Monell claims against the municipalities have not been alleged in the FAC.  (Id.)

### III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678).

Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted).  The "plausibility"

determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

### IV.    ANALYSIS

Defendants Borough of Ephrata, Detective Graeme Quinn, Officer Peter G. Sheppard, City of Lancaster, and Officer Matthew Odenthal move to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. Nos. 27, 28.)  Defendants' arguments will be addressed in turn.

> **A.    Plaintiff's Claims Against Sheppard, Quinn, and Odenthal Will Be Dismissed Because There Was Probable Cause to Arrest Plaintiff**

Plaintiff's claims for false arrest and malicious prosecution will be dismissed because Ephrata Detectives Sheppard and Quinn, and Lancaster Officer Odenthal had probable cause to seek a warrant for Plaintiff's arrest.

To properly allege a false arrest claim, a plaintiff must show that he or she was arrested without probable cause.  Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995). To properly allege a malicious prosecution claim under Section 1983, a plaintiff must show the following:

> (1) the defendant initiated the proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

 Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

### 1.    Ephrata Detective Sheppard Had Probable Cause to Arrest Moore

Based on the information Detective Sheppard and Detective Quinn obtained from their investigation of Roe's sexual assault, Sheppard had probable cause to request a warrant from a magistrate judge to arrest Plaintiff for statutory rape and related charges.  The probable cause was set forth in Detective Sheppard's affidavit, and the arrest warrant was properly issued by a magistrate judge based upon the probable cause.

Under the Fourth Amendment, police officers are required to have probable cause before making an arrest.  Papachristou v. City of Jacksonville, 405 U.S. 156, 169 (1972); Reedy v. Evanson, 615 F.3d 197, 211 (3d Cir. 2010).  A police officer has probable cause to arrest "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  Merkle v. Upper Dublin Sch. Dist., 211 F. 3d 782, 788 (3d Cir. 2000) (citation omitted).  Probable cause does not require proof of guilt beyond a reasonable doubt, but rather only a fair probability that the arrestee committed the crime at issue.  Dempsey v. Bucknell Univ., 834 F. 3d 457, 467 (3d Cir. 2016) (quoting Wilson v. Russo, 220 F.3d 781, 789 (3d Cir. 2000)).

"[B]efore issuing an arrest warrant, a magistrate need not find proof beyond a reasonable doubt, or by a preponderance of the evidence, that a suspect has committed the crime(s) in question . . . . [I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'"  Lindenbaum v. Erenius, Civ. A. No. 10-00285, 2010 WL 2375958, at *5 (E.D. Pa. June 10, 2010), aff'd, 433 F. App'x 119 (3d Cir. 2011) (citing Illinois v. Gates, 462 U.S. 213, 235 (1983)).  A court must evaluate the totality of circumstances to determine whether the objective facts available to the arresting officers were sufficient to

justify a reasonable belief that a suspect had committed or was committing a crime.  Merkle, 211 F.3d at 789.

In this case, despite the clear showing of probable cause, Moore argues that the Ephrata detectives recklessly disregarded the truth by omitting Roe's admission that she had used K-2 prior to her October 2, 2014 interview with the Youth Intervention Center in Detective Sheppard's Affidavit for Probable Cause and that she had made previous false allegations of sexual assault in the past.  (Doc. No. 25 ¶ 22; Doc. No. 55-1 at 1.)  He also claims that the Ephrata officers illegally showed Roe his photo alone, without photos of other suspects.  (Doc. No. 25 ¶ 56.)

The affidavit of Detective Sheppard submitted to the magistrate judge on May 5, 2015 to arrest Moore alleged facts that establish there was probable cause to arrest Moore.  The factual affidavit is set forth above.  It shows that Roe, whose date of birth is 3/26/1999, had reported having sexual relations with an older male, later identified as Moore, a person in his 40s, during summer 2014.  It includes her physical description of her perpetrator and the physical location of their sexual encounters.  It states that Roe's recollection of their first sexual encounter took place on July 1, 2014, which she remembered because it was the same day of her friend's attempted suicide.  The affidavit also refers to the Ephrata Motel guest log which had an entry that Moore was a guest at the motel on the date during which Roe stated her rape occurred.  It further notes that he stayed in room #7 of the motel and that Moore resided in Ephrata during the dates in question.  Finally, the affidavit states that Moore fit the physical description provided by Roe, the victim.

**a. The affidavit of probable cause did not need to include mention of Roe's prior drug use or her past allegations of sexual assault.**

Plaintiff argues that the Ephrata detectives improperly omitted from the affidavit of probable cause the fact that Roe admitted to using drugs prior to her October 2, 2013 interview and that she had made claims of sexual assault in the past.

"To determine whether information was recklessly omitted, we ask whether the officer withheld a fact in his ken that any reasonable person would have known that this was the kind of thing the judge would wish to know." Dempsey v. Bucknell Univ., 834 F.3d 457, 470 (3d Cir. 2016) (citation and alteration omitted). In conducting this inquiry, the Court must see whether (1) the officer had knowledge of the alleged information that was recklessly omitted; and (2) that the alleged information is relevant to the existence of probable cause. Id. at 471.

Here, the Ephrata detectives did not seek a warrant immediately following the October 2, 2014 interview during which Roe stated she had recently used drugs. It was after this interview that the Youth Intervention Center referred her case to the Lancaster Children's Alliance, whose social worker then met with her approximately a month later, on November 19, 2014. (Doc. No. 53 at 2.) During the November 19, 2014 interview, Roe recalled extensively her interactions with her perpetrator. She provided a physical description of her perpetrator and related that she had sexual relations with him at the Ephrata Motel multiple times in summer 2014. (Doc. No. 53 at 2.) Notably, she recalled that the first time she met him was the same day her friend attempted to commit suicide. (Id.) After verifying hospital records, the detectives were able to establish July 1, 2014 as the date Roe and "Dude" met for the first time. (Id.) This prompted the Ephrata detectives to review the motel's guest log for that date and eventually discover that Moore had rented room #7, one of the two room numbers Roe had recalled during her Children's Alliance interview. (Doc. Nos. 53 at 2; 54-1 at 11.)

14

After interviewing Moore, the detectives learned that Moore had seen Roe before, that he lived in Ephrata at the time of the alleged incident, and that he was staying at the Ephrata Motel in room #7 on the purported night of the incident.  Thus, the exclusion of Roe's usage of K-2 during her October 2, 2014 interview did not taint the detectives' probable cause because they relied heavily on Roe's statements during her November 19, 2014 interview and information they obtained through the course of their own investigation.

With respect to Roe's previous claims of sexual assault, upon review of the October 2, 2014 interview report, the case workers who met with Roe stated that she had "made quite a few allegations of rape in the past."  (Doc. No. 55-1 at 3.)  There is no indication that these allegations were false.  Allegations of rape cannot be assumed to be false.  Police authorities have a duty to investigate any individual allegation of sexual assault or abuse, irrespective of any other outstanding reports made by the purported victim.

Even if the challenged omissions were included in the affidavit, there was still probable cause to arrest Moore.  "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."  Lindenbaum, 2010 WL 2375959, at *6 (quoting Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997)); see also Anderson v. Goga, Civ. A. No. 11-528, 2013 WL 3242445, at *2 (W.D. Pa. June 25, 2013) ("Once probable cause is established, an officer has no duty to search for exculpatory evidence or to further investigate the circumstances surrounding the incident.").

Accordingly, Detective Sheppard was not reckless in omitting in his Affidavit of Probable Cause the fact that Roe had prior drug use and the fact that she had alleged sexual abuse in the past.  He prepared the affidavit with probable cause set forth above which had more than ample

facts to establish probable cause that Moore committed statutory sexual assault and the related charges.  For this reason, the claims of malicious prosecution and false arrest against Detectives Sheppard and Quinn will be dismissed.

**b.  The Ephrata detectives' use of Plaintiff's photo was permissible.**

Showing Roe a photo of Moore without photos of other suspects was permissible because Detectives Sheppard and Quinn had other reliable evidence that linked the identity of Roe's perpetrator to Moore.

Reliability is the "linchpin" when evaluating whether the identification of a suspect was proper.  Manson v. Brathwaite, 432 U.S. 98, 114 (1977).  In evaluating reliability, a court must look to whether "under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive."  Neil v. Biggers, 409 U.S. 188, 199 (1972).  As such, the court considers factors that could result in a misidentification.  Id.  These factors, set forth in Biggers, "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."  Id. at 199-200.

Here, Moore challenges Detectives Sheppard and Quinn's use of a single photo of him without any other photos to assist Roe in confirming her perpetrator's identity.  The FAC does not specify when this photo was shown to Roe, but presumably this occurred after the detectives had already obtained information from the Children's Alliance November 19, 2014 interview.[12]  At this point, the police had evidence that made it fairly probable that Moore could be Roe's perpetrator.

---

[12] The Ephrata detectives initiated their investigation after receiving information from the Lancaster County's Children's Alliance.  Thus, it is not possible that Roe was shown a photo of Moore before the detectives had received the report of Roe's November 19, 2014 interview.

16

Guided by the <u>Biggers</u> factors, it was not impermissible for the detectives to show Roe a single photo of Moore.  Under the first factor, the Court will consider the opportunity of the witness to view the suspect at the time of the crime.  Roe stated that she had multiple encounters with "Dude" in summer 2014.  She described their meetings in some detail which included sexual activity.  Thus, Roe had several opportunities to observe the person with whom she had sexual activity, mainly in intimate settings, and this factor weighs against the likelihood of misidentification.

Second, the Court looks to Roe's degree of attention during her observations of "Dude." Not only did she have multiple opportunities to observe this person, but she also had intimate sexual relations with him.  She described her encounters with graphic specificity.  During her interview with Ms. Halye, the social worker at Children's Alliance, Roe recalled several episodes with her perpetrator at the Ephrata Motel, including details of their conversations, where the room was in relation to the motel building, and the specific locations where they would meet in Lancaster County.  (<u>See</u> Doc. No. 54-1 at 11-14.)  Accordingly, the second factor also weighs against the possibility of misidentification.

Third, the Court considers the accuracy of Roe's prior description of her perpetrator. During her November 19, 2014 interview, Roe described him as a black male with short hair in his forties who often wore a sweater, sweatpants, and brown work boots.  (Doc. No. 53 at 2; 54-2 at 6.)  Although many individuals would fit the description of "black male with short hair in his forties," Roe's recollection is notable considering the fact that she spent time with "Dude" during the summer, a time where sweaters, sweatpants, and boots are not typically worn.  The record does not indicate, however, whether Plaintiff was dressed in such attire when he was questioned or arrested.  Nevertheless, her physical description was accurate.

Fourth, the Court considers the level of certainty demonstrated by Roe when the Ephrata detectives showed her the photo of Moore.  The record does not indicate whether she hesitated in identifying Moore as her perpetrator nor does it reflect how promptly she identified him.  This factor, therefore, is neutral in evaluating the likelihood of misidentification.

Finally, the Court considers the amount of time between the crime and Roe's identification of Moore.  Roe reported that she spent multiple days over summer 2014, beginning in early July, with "Dude."  She identified Moore in a photograph sometime during the Ephrata detectives' investigation, which commenced approximately in the fall or winter of the same year. Admittedly, several weeks or months had passed between the time of Roe's rape and the time of her identification of Moore.  But the amount of time Roe spent with her perpetrator, however, mitigates the risk of erroneous identification.

Thus, upon considering the totality of the circumstances to determine the reliability of her identification, Roe's identification is reliable.  Four of the five Biggers factors show a reliable identification, and the fifth factor is neutral.   Thus, Roe's "ability to make an accurate identification [is] hardly outweighed by the corrupting effecting of the challenged identification itself."  Manson v. Brathwaite, 432 U.S. 98, 116 (1977).  As such, the Ephrata detectives' use of Plaintiff's photo was permissible because, in view of the totality of the circumstances, Roe's misidentification of her perpetrator was highly unlikely.

For all the reasons set forth above, Moore's claims against Detectives Sheppard and Quinn alleged in Counts I and II for false arrest and malicious prosecution will be dismissed.

### c. Lancaster City Police Officer Odenthal Had Probable Cause to Arrest Moore

Lancaster Police Officer Matthew Odenthal had probable cause to seek a warrant for Moore's arrest based upon facts relayed to him by the Ephrata Police Department and Roe's November 19, 2014 interview with Children's Alliance.  The affidavit is set forth above.

As discussed supra, an officer has probable cause to arrest "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Rogers v. Powell, 120 F.3d 446, 453 (3d Cir. 1997) (citing Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995)).  And when relying upon statements made by fellow officers, "[p]robable cause exists only if the statements made by fellow officers are supported by actual facts that satisfy the probable cause standard." Rogers, 120 F.3d at 453.  "A police officer, after all, is not obligated 'to conduct a mini-trial' before arresting a suspect."  Potts v. City of Philadelphia, 224 F. Supp. 2d 919, 934 (E.D. Pa. 2002) (citing Brodnicki v. City of Omaha, 75 F. 3d 1261, 1264 (8th Cir. 1996)).

In this case, the pertinent facts contained in Officer Odenthal's affidavit that show probable cause are: (1) in January 2015, the Ephrata Police Department notified the Lancaster City Police Department that a female reported having sexual relations and that one such episode occurred at the Marriot hotel in Lancaster; (2) the female was interviewed on November 19, 2014, during which she discussed the male with whom she was having sexual relations; (3) the female knew the male to be from the Ephrata area; (4) the female met the male in a men's bathroom at the Marriott hotel located in Lancaster, Pennsylvania during which they engaged in sexual relations; (5) the female described the male as being tall and black with short hair who often wore a sweater, sweatpants, and brown work boots; (6) in February 2015, Ephrata

Detective Quinn notified Officer Odenthal that he had identified the male as Richard Anthony Moore, who was a 49-year-old black male; and (7) the male was approximately 48 years old at the time of the incident at the Lancaster Marriott and the female was a minor[13] and that the two were not married to each other.  (Doc. No. 54-2 at 6.)

Officer Odenthal did not rely solely upon the Ephrata detectives' statements.  His affidavit is supported by Roe's statements which included a physical description of her statutory rapist and the location of their sexual encounters in Lancaster County.  He had knowledge that Roe was a minor and that Moore was an adult who fit the description Roe provided and that they were not married.  He received facts from Detective Quinn that they had identified Moore as "Dude."  Accordingly, Officer Odenthal's affidavit demonstrated sufficient probable cause to seek Moore's arrest for statutory sexual assault and the related charges.  Therefore, Moore's claims for false arrest and malicious prosecution against Odenthal alleged in Counts I and II will be dismissed.

**B.**     **Sheppard, Quinn, and Odenthal Are Entitled to Qualified Immunity Under Section 1983**

The claims against Detective Sheppard, Detective Quinn, and Officer Odenthal also will be dismissed because these Defendants are entitled to qualified immunity.  Their actions did not violate clearly established law.

In a suit for damages, state officials are entitled to qualified immunity unless a plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was

---

[13]  The redacted affidavit provided to the Court does not indicate how old Roe was at the time of the incident at the Marriott hotel in Lancaster.  (See Doc. No. 54-2 at 6.)  Officer Odenthal used language from 18 Pa. Stat. § 3122.1(b), referring to sexual intercourse with a complainant under the age of sixteen who is not married to the individual in question, and thus it follows that Roe was a minor.  The Criminal Complaint also states that there is an approximate thirty-four year age difference between Roe and Moore.  (Id. at 4.)

'clearly established' at the time of the challenged conduct.'" Mirabella v. Villard, 853 F.3d 641, 648 (3d Cir. 2017) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)).

Here, with respect to the first prong, the Court has already concluded that these Defendants did not commit any constitutional violations because the arrests of Plaintiff were based upon findings of probable cause that Moore was Roe's statutory rapist. For this reason alone, they are entitled to qualified immunity and dismissal of the claims set forth in Counts I and II.

The Court's analysis could end now because a court is not required to consider the second step of the qualified immunity test if no constitutional violation occurred. Scott v. Harris, 550 U.S. 372, 377 (2007) (explaining that a court must only proceed to the second step of the qualified immunity analysis if it finds a constitutional violation); see also Reedy v. Evanson, 615 F.3d 197, 223-24 (3d Cir. 2010) (stating that no further inquiry is required if no constitutional violation is found). However, the Court will nonetheless briefly discuss the second prong.

Under the second prong of the test, qualified immunity applies "unless the official's conduct violated a clearly established constitutional right." Pollock v. City of Philadelphia, 403 F. App'x 664, 669 (3d Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)). A constitutional right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Woodlen v. Jimenez, 173 F. App'x 168, 170 (3d Cir. 2006) (per curiam) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Davenport v. Borough of Homestead, 870 F.3d 273, 281 (3d Cir. 2017) (quoting Ashcroft, 563 U.S. at 741 (2011)). "The dispositive question is whether the violative nature of particular conduct is clearly established. This inquiry must be taken in light of the

specific context of the case, not as a broad general proposition." Id. (emphasis in original) (quoting Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam)).

The actions of Detectives Sheppard and Quinn and Officer Odenthal leading up to Plaintiff's arrest were not unlawful.  They acted in reliance upon the information supplied by Roe and obtained through the course of their investigation of a statutory rape.  As discussed, they had probable cause to arrest him.  Their conduct did not violate a clearly established constitutional right, and for this reason also they are entitled to qualified immunity.

### C.     Moore's Monell Claims Against the City of Lancaster and the Borough of Ephrata Will Be Dismissed

In Counts IV and V, Moore fails to adequately state a claim against the City of Lancaster and the Borough of Ephrata, respectively, because he is unable to show that the alleged violations of his constitutional rights arising from his June 30, 2015 arrest and his August 5, 2015 arrest stemmed from a policy, custom, or practice of the two municipalities.

The United States Supreme Court has held that a municipality or local government entity can be held liable pursuant to Section 1983 under certain limited circumstances, but not on the basis of respondeat superior.  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978).  To make a Monell claim, "a plaintiff must show a policy or custom created by a policymaker that caused the alleged constitutional violation."  Rosembert v. Borough of East Lansdowne, 14 F. Supp. 3d 631, 642 (E.D. Pa. 2014) (citing Natale v. Camden Cty. Corr. Facility, 318 F. 3d 575, 583-84 (3d Cir. 2003)).  Moreover, the Third Circuit has held that "a municipality's failure to train police officers only gives rise to a constitutional violation when that failure amounts to deliberate indifference to the rights of persons with whom the police come into contact."  Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

**1.  Moore Fails to Identify a Custom, Practice, or Procedure
    by the Borough of Ephrata**

The FAC alleges the following <u>Monell</u> claim against the Borough of Ephrata:

Defendant, Borough of Ephrata developed and maintained policies, practices,
procedures and customs exhibiting deliberate indifference to the Constitutional
rights of persons including the use of illegal photo arrays, which caused violations
of Plaintiff's constitutional and other rights.

(Doc. No. 25 ¶ 63.)

But Moore has failed to show that the use of his photo for identification was the result of

policies, practices, procedures, or customs developed and maintained by the Borough of Ephrata.

In fact, as described above, the use of the single photo of Moore in this specific case was not

inappropriate.

Moore's claim is based on Detectives Sheppard and Quinn's showing of only his photo to

Roe, after which she identified him as her perpetrator.  Moore has failed, however, to set forth

additional facts evidencing a policy or custom of the Borough of Ephrata to illegally use a single

photo of a suspect to induce an identification.  He does not identify other scenarios whereupon

the Borough improperly utilized a single photo to identify a criminal suspect.  Accordingly, his

<u>Monell</u> claim against the Borough of Ephrata fails.

**2.  Moore Fails to Identify a Custom, Practice, or Procedure
    by the City of Lancaster**

Moore alleges that:

Defendant, [the City of Lancaster][14] developed and maintained policies, practices,
procedures and customs exhibiting deliberate indifference to the Constitutional
rights of persons including the use of third-hand information on which to base

---

[14]  Count IV of the FAC contains the header, "Plaintiff vs. City of Lancaster."  (Doc. No. 25 at
10.)  The text that follows, however, refers to Defendant Borough of Ephrata.  (<u>Id.</u> ¶ 67.)  This
is clearly a typographical error because the preceding section discusses Moore's claims
against the Borough of Ephrata.  Thus, the Court will construe Count IV as a claim against
Defendant City of Lancaster.

Affidavits of Probable Cause, which caused violations of Plaintiff's constitutional
and other rights.

(Doc. No. 25 ¶ 67.)

Similarly, Moore has failed to show that the use of third-hand information in the filing of
an affidavit of probable cause was the result of policies, practices, procedures, or customs
developed and maintained by the City of Lancaster.  Consequently, his <u>Monell</u> claim against the
City of Lancaster fails.

### (1) CONCLUSION

For these reasons, Defendants' Motions to Dismiss (Doc. Nos. 27, 28) will be granted and
the FAC (Doc. No. 25) will be dismissed in its entirety.  An appropriate Order follows.